IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KACEY KIMBROUGH, Special Administrator of the Estate of Shawn Thomas Kimbrough;<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER JAMES GORHAM, JENNINGS PLANT SERVICES, LLC, SPENCER R. JENNINGS, TARIN K. JENNINGS, and HOPE COOPERATIVE CARE, INC.,<br><br>Defendants. | 8:21-CV-35<br><br>MEMORANDUM AND ORDER |

## I.  INTRODUCTION

Kacey Kimbrough, Special Administrator of the Estate of Shawn Thomas Kimbrough, sued Christopher James Gorham, Jennings Plant Services, LLC, Spencer R. Jennings, Tarin K. Jennings, and Hope Cooperative Care, Inc., for wrongful death, negligent entrustment, and negligent hiring and supervision. Before the Court is Spencer R. Jennings's and Tarin K. Jennings's (collectively, the "Jenningses'") Motion to Dismiss for Failure to State a Claim on Count IV of Kimbrough's Second Amended Complaint. Filing 44. For the reasons stated herein, the Court grants the Jenningses' motion.

1

## II.     BACKGROUND

Defendant Gorham worked for defendant Jennings Plant Services, LLC. Filing 41 at 5. Defendants the Jenningses are the owners and managers of Jennings Plant Services. Filing 41 at 6. Gorham had two prior convictions for driving while intoxicated and, according to plaintiff Kimbrough, had a known propensity for drunk driving. Filing 41 at 5.

In the morning of October 27, 2020, Gorham either arrived at work intoxicated or became intoxicated while working. Filing 41 at 9. While on the job, Gorham left Jennings Plant Services in a 2011 Ford F150 pickup—a vehicle owned by Jennings Plant Services and insured under the Jenningses' names. Filing 41 at 3, 7, 9. He began traveling southbound on Highway 75, a two-lane road in Nebraska. Filing 41 at 3. At the same time, Shawn Kimbrough was driving northbound. Filing 41 at 3. Gorham, allegedly intoxicated, crossed the center line and collided head-on with Shawn Kimbrough. Filing 41 at 3-4. The accident caused Shawn Kimbrough's death. Filing 41 at 4.

Based on the above, Kacey Kimbrough, Shawn Kimbrough's surviving widow, sued the defendants on January 29, 2021. Filing 1. In her second amended complaint, Kimbrough brings claims for wrongful death against Gorham and Jennings Plant Services, negligent entrustment against the Jenningses, and negligent hiring and supervision against the Jenningses. Filing 41 at 3-10. On June 29, 2021, the Jenningses filed their Motion to Dismiss for Failure to State a Claim. Filing 44. The Jenningses seek to dismiss Count IV—the negligent hiring and negligent supervision claim—of Kimbrough's Second Amended Complaint. Filing 45 at 1.

### III. ANALYSIS

#### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

#### B. Leave to File Surreply

Before proceeding to the merits of the Jenningses' Motion to Dismiss, the Court considers Kimbrough's Motion for Leave to File Surreply to Defendants' Reply Brief. Filing 52. In her

motion, Kimbrough asks the Court for leave to file a surreply "to set the legal record straight on the structure of the Restatement, and the interplay between § 7 and 19." Filing 52 at 1.

The Court denies Kimbrough leave to file a surreply brief. In her brief in opposition, Kimbrough has already discussed sections 7 and 19 of the Restatement (Third) of Torts. Filing 47 at 9-11. The Court has been well informed on the issues by both parties and sees no purpose in allowing leave to file a sur reply. *See Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012) ("[S]urreplies are generally disfavored.").

### C. Negligent Hiring and Supervision

In their Motion to Dismiss, the Jenningses argue that they owed no duty to Shawn Kimbrough, and thus Kimbrough's negligent hiring and supervision allegations fail to state a claim. Specifically, the Jenningses state they cannot be held personally liable in tort because "(1) the Jennings' conduct did not affirmatively create a risk for physical harm to Kimbrough, and (2) the Jennings shared no 'special relationship' with either Kimbrough or Gorham." Filing 45 at 1. Kimbrough responds that she has stated a prima facie case for negligent hiring and supervision because the Jenningses "hir[ed] Gorham as a driver and allow[ed] him to drive for them despite his criminal DUI convictions, and personally fail[ed] to provide adequate supervision when he was intoxicated in the morning hours at work and given the truck by them to drive." Filing 47 at 2.

Kimbrough's claim lies on the intersection of two lines of Nebraska caselaw. On one hand, Nebraska courts recognize that employees can be held personally liable for injuries sustained to a third party, even if they do not directly cause the injury. *See Carlson v. Metz,* 532 N.W.2d 631, 635 (Neb. 1995) (noting that while "courts do not generally impose liability upon an employee when the employee was not in charge of or did not actually do the work that caused the injury," the central issue is "whether the employee owed the plaintiff a duty of reasonable care not to injure

4

him."). Thus, employees, such as the Jenningses, can be held liable for negligent supervision. *See id.* at 636. On the other hand, under Nebraska law, imposition of a legal duty requires affirmative conduct by the defendant. *See Bell v. Grow With Me Childcare & Preschool LLC*, 907 N.W.2d 705, 718 (Neb. 2018) (holding that the first step in a duty analysis "is to determine whether the actor's affirmative conduct created a risk of physical harm such that the general duty to exercise reasonable care under § 7 [of the Restatement (Third) of Torts] is applicable."). Therefore, if the Jenningses did not engage in affirmative conduct, Nebraska law imposes no duty on them.

The Court must examine whether the Jenningses, as employees of Jennings Plant Services, can be held liable for Shawn Kimbrough's injuries caused by Gorham, a fellow employee. Employees can be held personally liable for injuries to a third party if (1) the employer owes a duty to the third party, (2) the employer delegated the duty to the employee, (3) the employee failed "to use the degree of care required by ordinary prudence under the same or similar circumstances," and (4) the employee owed a personal duty to the injured third party rather than "a general administrative responsibility for the work being done." *Metz*, 532 N.W.2d at 635. The Jenningses focus their argument on the fourth element, arguing that they owed no duty to Kimbrough. Filing 45 at 1.

"The threshold issue in any negligence action is whether the defendant owes a legal duty to the plaintiff." *Bell*, 907 N.W.2d at 713. Nebraska courts generally analyze legal duty under the Restatement (Third) of Tort's framework. *Id.* at 717-18; *see also A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 784 N.W.2d 907, 917 (Neb. 2010) (adopting § 7 of the Restatement (Third) of Torts). Section 7 of the Restatement (Third) of Torts "does not recognize a universal duty to exercise reasonable care to all others in all circumstances." *Bell*, 907 N.W.2d at 718. "Rather, it imposes a general duty

5

of reasonable care only on an actor whose conduct has created a risk of physical harm to another, and it recognizes that absent such conduct, an actor ordinarily has no duty of care to another." *Id.*

The case of *Bell* is instructive. In *Bell*, the Nebraska Supreme Court considered whether two childcare centers had a duty to protect a child from the criminal acts of a nanny they formerly employed. *See Bell*, 907 N.W.2d at 709. The *Bell* court first observed that an actor has a general duty of reasonable care only when "the actor's affirmative conduct created a risk of physical harm." *Id.* at 718. Thus, "[w]hen the only role of the actor is failing to intervene to protect others from risks created by third persons, the actor's nonfeasance cannot be said to have created the risk." *Id.*

The plaintiff in *Bell* argued that the childcare centers had a duty to report the nanny's abusiveness, and that failing to do so was "affirmative conduct of hiding [the nanny's] abuse from authorities." *Id.* In rejecting this argument, the Court held, "Under § 7 [of the Restatement (Third) of Torts], '[a]n actor's conduct creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have faced absent the conduct.'" *Id.* at 719 (second alteration in original). Whether framed as a failure to report or affirmative conduct of hiding misconduct, the childcare centers "did not create or increase the risk [the nanny] posed." *Id.* Therefore, the childcare centers owed no duty to the plaintiff's child. *Id.*

The *Bell* case demonstrates that a legal duty to exercise reasonable care applies only if "the actor's affirmative conduct created a risk of physical harm." *Id.* at 718. But Kimbrough's complaint does not allege that the Jenningses engaged in "affirmative conduct [that] created a risk of physical harm" to Shawn Kimbrough. *Id.* ("[T]he conduct creating the risk must be some affirmative act."). Instead, the complaint is phrased only in terms of the Jenningses' failure to act or intervene. Kimbrough alleges that the Jenningses "were negligent in failing to supervise and

6

monitor the activities of [Gorham]" and that they "allowed him to use the company vehicle while intoxicated." Filing 41 at 9. As the *Bell* Court instructs, "When the only role of the actor is failing to intervene to protect others from risks created by third persons, the actor's nonfeasance cannot be said to have created the risk." *Id.* Failing to act, in general, is not affirmative conduct giving rise to a legal duty. *See id.* Because Kimbrough only alleges that the Jenningses failed to prevent Gorham from driving drunk, they owed no duty to Shawn Kimbrough.[1]

The Court is unpersuaded by Kimbrough's argument that this case is analogous to the Nebraska Supreme Court case *Carlson v. Metz*, 532 N.W.2d 631 (Neb. 1995). In *Metz*, the owner of Metz Engineering directed an employee to trench an area with a trenching machine. *Id.* at 633. While the employee was operating the trenching machine, he killed Reynolds, another employee of Metz Engineering. *Id.* Reynold's estate sued the owner of Metz Engineering, under a theory of negligent supervision, seeking to hold him personally liable under common law theories of agency. *Id.*

The Nebraska Supreme Court held that Reynold's estate could maintain an action against the owner personally as an agent or employee of Metz Engineering. *Id.* at 636. According to the *Metz* Court, "an agent or employee cannot shield himself from liability solely by virtue of the fact that he is in another's employ." *Id.* at 635. Quoting a prior case, the Court wrote, "It is not the agent's contract with his principal which exposes him to or protects him from liability to third persons, but his common-law obligation to so use that which he controls as not to injure another." *Id.* (quoting *Dieter v. Hand*, 333 N.W.2d 772, 774 (Neb. 1983)). Significantly, the Court held,

---

[1] Kimbrough cites section 19 of the Restatement (Third) of Torts, arguing that it demonstrates the Jenningses can be liable for injuries to third parties. Filing 47 at 6-7. However, section 19 deals with breaching a duty of care, not whether a person owes a duty in the first place. *See* Restatement (Third) of Torts § 19. Because the Court concludes the Jenningses did not owe a duty to Shawn Kimbrough, section 19 is inapplicable.

7

"The defendant officer, agent, or employee must owe a personal duty to the injured third party, breach of which specifically caused the plaintiff's damages." *Id.*

Thus, *Metz* requires that the employee owes a duty to the injured third party before he or she can be held personally liable. In *Metz*, the owner of Metz Engineering's duty to Reynolds attached when the owner engaged in affirmative conduct by assuming a duty to trench an area with a trenching machine in which Reynolds was working, and then directed an employee to use the trench machine. *See Schmunk v. United States*, No. 7:19-CV-5010, 2021 WL 2646915, at *4 (D. Neb. Apr. 15, 2021) (describing this area of Nebraska law as dealing "with employees or agents assuming a duty from an employer or principal"). Having thus undertaken a duty to Reynolds, he was obliged to act to prevent unreasonable risks. In this case, Kimbrough does not allege that the Jenningses engaged in any affirmative conduct equivalent to assuming a duty to dig a trench. Therefore, unlike *Metz*, they owed no duty to Shawn Kimbrough and they were not obliged to prevent the risk Gorham posed to Shawn Kimbrough.

This reading of *Metz* is consistent with the Nebraska Supreme Court case *Dieter v. Hand*, upon which *Metz* relies. *See Metz*, 532 N.W.2d at 635. In *Dieter*, agents of a public power district failed to prevent an electric line that crossed a highway from sagging and becoming frayed, eventually leading to the plaintiff being electrocuted. *Dieter*, 333 N.W.2d at 773. In holding that the agents could be personally liable, the *Dieter* Court stated, "Before an employee becomes liable for an act or omission alleged to have constituted negligence, with resultant injury to a third person, it must appear that the employee has agreed to perform such act for his master and has assumed the performance of it." *Id.* (citing 53 Am. Jur. 2d *Master and Servant* § 449 (1970)). Thus, in *Metz*, once the defendant undertook the responsibility of trenching an area, he was under a duty to do so in a nonnegligent fashion. In this case, we have no affirmative action from the Jenningses showing

they undertook responsibility for Gorham's actions. Therefore, the law imposes no duty upon them to prevent the risk Gorham posed to Shawn Kimbrough. *See Pester v. Holmes*, 191 N.W. 709, 711 (Neb. 1923) ("A servant is liable for an injury produced by an affirmative misfeasance, but not for mere neglect; the remedy in that case being against the master alone.") (internal citations omitted).[2]

## IV.     CONCLUSION

For the foregoing reasons, the Court grants Spencer R. Jennings's and Tarin K. Jennings's Motion to Dismiss Count IV of Kimbrough's Second Amended Complaint. Accordingly,

IT IS ORDERED:

1. Defendants' Motion to Dismiss, Filing 44, is granted; and
2. Plaintiff's Motion for Leave to File Surreply, Filing 52, is denied.

Dated this 5th day of October, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge

---

[2] Kimbrough makes no argument that a special relationship existed between the Jenningses and Gorham that imposed upon them the duty to control Gorham's actions. *See Rodriguez v. Lasting Hope Recovery Ctr. of Cath. Health Initiatives*, 955 N.W.2d 707, 716 (Neb. 2021) ("[T]here is generally no duty to control the conduct of a third person to prevent him or her from causing physical harm to another unless 'a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct.'" (quoting Restatement (Second) of Torts § 315(a)) (internal quotes omitted)). Nor does such a special relationship exist in this case. *See* § 41 Restatement (Third) of Torts (listing special relationships as parents with dependent children, a custodian with those in its custody, mental health professionals with patients, and employers with employees in certain circumstances). While an employer can have a special relationship with an employee, Jennings Plant Services, not the Jenningses, is Gorham's employer. *See Martensen v. Rejda Bros.*, 808 N.W.2d 855, 863 (Neb. 2012) ("[I]n negligence cases, an *employer* stands in a special relationship with its employee who is in imminent danger or injured and thereby helpless, and such employer owes the employee a duty of reasonable care with regard to risks that arise within the scope of the relationship." (emphasis added)).